IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 23-cr-219 (DLF) |
| | : | |
| **LONG DUONG,** | : | 17 U.S.C. § 1752(a)(1) |
| | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Long Duong, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected

members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted

those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $1.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Duong's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, Long Duong (Duong), lives in Worcester, Massachusetts. In early January 2021, Duong traveled by car with his former housemate, Julie Miller (Miller), to a hotel in Northern Virginia. While at the hotel, Duong and Miller decided to follow protestors who planned to attend former President Trump "Stop the Steal" rally in Washington, D.C. on January 6, 2021. The purpose of the rally was to protest Congress' certification of the Electoral College.

9. Duong and Miller attended the former President's speech and then walked with a large crowd towards the U.S. Capitol building. While on the Upper West Terrace, Duong and Miller stood outside the Senate Fire Door while Miller filmed the events on her cellular phone.

Miller's videorecording captured rioters repeatedly shouting "Break the windows!" Miller joined the crowd in changing "USA, USA."

10. At approximately 2:57 p.m., Duong and Miller entered the U.S. Capitol through the Senate Fire Door. Upon entering, Duong and Miller heard the blaring of a security alarm. Duong and Miller entered the Senate Parliamentarian's office space, where Miller filmed the destruction that had already occurred in that that office. Duong and Miller walked further into the Senate Parliamentarian's office suite, entering an interior office space, and Miller sat down in a desk chair as Duong took pictures of her on his phone. Duong and Miller stayed in the Senate Parliamentarian's office space for roughly five minutes before they were pushed out of the office by police and were then pushed back out of the U.S. Capitol building through the Senate Fire Door.

11. Duong and Miller re-entered the U.S. Capitol at approximately 3:12 p.m. through the Senate Wing Door. As they entered, Duong and Miller could hear the blaring of an alarm and see rioters climbing through broken windows.

12. Duong and Miller stayed near the doors and took pictures until they were pushed out of that door by police.

*Elements of the Offense*

13. The parties agree that a violation of 18 U.S.C. § 1752(a)(1) requires the following elements:

   a. The defendant entered or remained in a restricted building or grounds without lawful authority to do so;

   b. The defendant did so knowingly.

14. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that when he entered the U.S. Capitol building on

January 6, 2021, it was a restricted building and that he knew at the time he entered the U.S. Capitol building that he did not have lawful authority to enter the building.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ *Melanie Krebs-Pilotti*
Melanie Krebs-Pilotti
Trial Attorney
U.S. Department of Justice
Antitrust Division
Detailed to the D.C. U.S. Attorney's Office
601 D St. N.W.
Washington, DC 20530
melanie.krebs-pilotti2@usdoj.gov
(202) 870-7457

## DEFENDANT'S ACKNOWLEDGMENT

I, Long Duong, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 10/29/23

_____
Long Duong
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 10/30/23

_____
Andrew Giering
Attorney for Defendant